**OIL EXPRESS NATIONAL, INC., Plaintiff,**

v.

**Thomas P. and Linda G. BURGSTONE, Illinoil, Inc., Ronald D. Kelley, Lisa M. Kelley, Kelley Partners, Inc., Michael G. Strick, Paula Strick and Strick Enterprises, Inc., Defendants/Counterclaimants,**

v.

**Dan BARNAS, Third–Party Defendant.**

No. 96 C 4816.

United States District Court, N.D. Illinois, Eastern Division.

March 5, 1997.

**368**

Joseph P. Reagen, Tilton, Fallon, Lungmus & Chestnut, Chicago, IL, Robert Morton Ward, Robert James Depke, Hill, Steadman & Simpson, Chicago, IL, for Oil Exp. Nat., Inc.

James J. Riebandt, Mary Alice Benoit, Riebandt & Dewald, P.C., Arlington Heights, IL, Robert M. Einhorn, Zarco & Pardo, P.A., Miami, FL, Robert Zarco, Robert Francis Salkowski, Zarco & Associates, Miami, FL, for Thomas P. Burgstone, Linda G. Burgstone, Illinoil, Inc., Ronald D. Kelley, Lisa M. Kelley, Kelley Partners, Inc., Michael G. Strick, Paula Strick, Strick Enterprises, Inc.

Robert Morton Ward, Hill, Steadman & Simpson, Chicago, IL, for Dan Barnas.

## *MEMORANDUM OPINION*

KOCORAS, District Judge:

This matter is before the court on the plaintiff's motion to dismiss several of the defendants' counterclaims for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6). For the reasons set forth below, this motion is granted in part and denied in part.

## BACKGROUND

Oil Express National, Inc. ("Oil Express") is a quick oil change franchisor based in Hindsdale, Illinois. The defendants in this case (collectively "defendants") are all residents of Illinois who have contracted with Oil Express to operate one or more franchises. The franchise agreements allowed the defendants to use such things as Oil Express'

intellectual property, including trademarks and service marks, and the distinctive shape of Oil Express' franchise buildings. It also obligated the defendants to make certain payments to Oil Express, including royalty payments and payments for advertising. At some unspecified time, the defendants discontinued remitting the required fees to Oil Express, in violation of their agreement. As such, their franchise agreements have been terminated and Oil Express instituted the present suit against them, alleging a variety of claims.

On October 13, 1996, we partially granted a motion by the defendants to dismiss several counts of the complaint against them, as well as several of the defendants for insufficient service of process. On December 12, 1996, the defendants filed a variety of counterclaims against Oil Express. These claims include: 1) breach of contract; 2) rescission; 3) breach of implied covenant of good faith and fair dealing; 4) breach of fiduciary duty; 5) accounting; 6) breach of third-party beneficiary contract; and 7) violations of the Illinois Franchise Disclosure Act of 1987, 815 ILCS 705/1 *et seq.* Oil Express presently moves to dismiss several of these counts for failure to state a claim upon which relief can be granted. Before we turn to the merits of this motion, we will briefly outline the legal standard which guides our inquiry.

## LEGAL STANDARD

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the sufficiency of the complaint, not to decide the merits of the case. Defendants must meet a high standard in order to have a complaint dismissed for failure to state a claim upon which relief may be granted. In ruling on a motion to dismiss, the court must construe the complaint's allegations in the light most favorable to the plaintiff and all well-pleaded facts and allegations in the plaintiff's complaint must be taken as true. *Bontkowski v. First National Bank of Cicero,* 998 F.2d 459, 461 (7th Cir.), *cert. denied,* 510 U.S. 1012, 114 S.Ct. 602, 126 L.Ed.2d 567 (1993). The allegations of a complaint should not be dismissed for failure to state a claim "unless it appears beyond a doubt that the plaintiff can prove

no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). *See also Hartford Fire Insurance Co. v. California*, 509 U.S. 764, 113 S.Ct. 2891, 125 L.Ed.2d 612 (1993); *Sherwin Manor Nursing Center, Inc. v. McAuliffe*, 37 F.3d 1216, 1219 (7th Cir.1994), *cert. denied*, —— U.S. ——, 116 S.Ct. 172, 133 L.Ed.2d 113 (1995). Nonetheless, in order to withstand a motion to dismiss, a complaint must allege facts sufficiently setting forth the essential elements of the cause of action. *Lucien v. Preiner*, 967 F.2d 1166, 1168 (7th Cir.), *cert. denied*, 506 U.S. 893, 113 S.Ct. 267, 121 L.Ed.2d 196 (1992).

In reviewing a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court is limited to the allegations contained in the pleadings themselves. Documents incorporated by reference into the pleadings and documents attached to the pleadings as exhibits are considered part of the pleadings for all purposes. Fed.R.Civ.P. 10(c). In addition, "[d]ocuments that a defendant attaches to a motion to dismiss are considered a part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Venture Associates Corp. v. Zenith Data Systems Corp.*, 987 F.2d 429, 431 (7th Cir.1993). It is with these principles in mind that we turn to the motion before us.

## DISCUSSION

In its motion, Oil Express seeks to dismiss Counterclaims III, IV, V, and VI for failure to state a claim upon which relief can be granted. We will discuss the application of this motion to each of these counterclaims below.

### I. Count III

Count III of the defendants' Counterclaim asserts a cause of action for breach of an implied duty of good faith and fair dealing. Oil Express moves to dismiss this count, arguing that Illinois does not recognize an independent cause of action based on the breach of such a duty. Because this argument is without merit in this case, we must deny Oil Express' motion with respect to this count.

In Illinois, a covenant of good faith and fair dealing is implied in every contract. *Scherer v. Rockwell Int'l Corp.*, 975 F.2d 356, 360 (7th Cir.1992), citing *Foster Enterprises, Inc. v. Germania Federal Savings and Loan Assoc.*, 97 Ill.App.3d 22, 52 Ill.Dec. 303, 421 N.E.2d 1375 (1981). *See also* 810 ILCS 5/1–203 (imposing a good-faith obligation on every contract under the Uniform Commercial Code). It is established that this duty has "never been an independent source of duties for the parties to a contract." *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1443 (7th Cir.1992). A cause of action may arise, however, in certain circumstances.

Problems involving the duty of good faith "generally arise where one party to a contract is given broad discretion in performance." *Northern Trust Co. v. VIII South Michigan Assoc.*, 276 Ill.App.3d 355, 212 Ill. Dec. 750, 759, 657 N.E.2d 1095, 1104 (1995), citing *Resolution Trust Corp. v. Holtzman*, 248 Ill.App.3d 105, 187 Ill.Dec. 827, 618 N.E.2d 418 (1993). The duty of good faith between contracting parties "requires that a party vested with contractual discretion must exercise his discretion reasonably and may not do so arbitrarily or capriciously." *Foster*, 52 Ill.Dec. at 309, 421 N.E.2d at 1381 (citations omitted) *see also Dayan v. McDonald's Corp.*, 125 Ill.App.3d 972, 81 Ill.Dec. 156, 170, 466 N.E.2d 958, 972 (1984). Thus, "[w]here contractual discretion is exercised in bad faith, the contract is breached and it is incumbent on the courts to grant appropriate relief; however, bad faith is not synonymous with erroneous judgment." *Foster*, 52 Ill. Dec. at 309, 421 N.E.2d at 1381. When such discretion is abused by a party in bad faith, then, a cause of action may arise derivatively from the duty of good faith and fair dealing. *See BA Mortgage and Int'l Realty Corp. v. American National Bank and Trust Co. of Chicago*, 706 F.Supp. 1364, 1373 (N.D.Ill. 1989).

In this case, the defendants have alleged both that Oil Express had wide discretion of performance under the franchise agreements and that it abused that discretion in bad faith. First, the defendants allege that the franchise agreement provided that

Oil Express would provide "revisions as needed of (sic) operations manual" and "advice on obtaining fleet maintenance programs". *See* Defendants' Counterclaim ¶ 39. They also allege that Oil Express promised to "use its best efforts to negotiate, enter into, and maintain national purchasing contracts" for the benefit of its franchisees, *see* Counterclaim ¶ 41, and that "after commencement of operations, training programs dealing with new products, equipment and methods of operations will be offered as Franchisor determines is desirable." *See* Counterclaim ¶ 38. These allegations establish that Oil Express had discretion of performance under the contract.

The Counterclaim also alleges that Oil Express acted in bad faith. The defendants allege that Oil Express failed to perform any of the above-enumerated acts, doing so in an "arbitrary and capricious" manner. *See* Counterclaim ¶ 45. They also claim that Oil Express failed to make "reasonable and necessary revisions" to its manual and "failed to use its best efforts ... and has failed to otherwise negotiate" certain contracts and prices. *See* Counterclaim ¶¶ 47–48. These claims sufficiently allege that Oil Express used its discretion in bad faith. The Counterclaim alleges both of the elements necessary for a cause of action for an abuse of contractual discretion. We therefore deny Oil Express' motion to dismiss Count III.

## II. Count IV

Count IV of the Counterclaim alleges that Oil Express breached a fiduciary duty in its maintenance of an advertising fund to which the defendants made contributions. The defendants allege that Oil Express breached this duty by failing to maintain and administer the fund for the sole purpose of providing regional and national advertising, principally by using assets from the funds for its own purposes and not exclusively for advertising purposes. *See* Counterclaim ¶¶ 23–24 and 55. However, because no fiduciary relationship existed in this case as a matter of law, we dismiss this count.

■ It is well established under Illinois law that parties to a contract, including franchise contracts, do not owe a fiduciary duty

to one another. *Original Great American Chocolate Chip Cookie Co., Inc. v. River Valley Cookies, Ltd.*, 970 F.2d 273, 280 (7th Cir.1992), citing *Murphy v. White Hen Pantry Co.*, 691 F.2d 350, 354 (7th Cir.1982) (other citations omitted). The defendants argue, however, that despite this general rule, a question of fact exists as to whether a fiduciary relationship existed in this case and that it would be improper to dismiss this count. They cite the proposition that in Illinois:

> There is no question but that when parties engage in certain relationships such as attorney and client, principal and agent, trustee and beneficiary, or partners, a fiduciary or confidential relationship may arise as a matter of law. It is also clear that, even in the absence of such traditional categorizations, the relationship will be found to exist as a matter of fact when one party reposes trust and confidence in another who thereby gains a resulting influence and superiority over the first.

*In re Estate of Wernick*, 151 Ill.App.3d 234, 104 Ill.Dec. 486, 493, 502 N.E.2d 1146, 1153 (1986), *aff'd in relevant part*, 127 Ill.2d 61, 129 Ill.Dec. 111, 535 N.E.2d 876 (1989) (citations omitted). However, we do not find that any question exists as to the presence of a fiduciary relationship in this case.

While it is true that a fiduciary relationship might exist outside of the traditional relationships enumerated above, a party must prove that it "is heavily dependent upon the advice of another" in order to establish such a duty. *See Carey Electric Contracting, Inc. v. First National Bank of Elgin*, 74 Ill.App.3d 233, 30 Ill.Dec. 104, 108, 392 N.E.2d 759, 763 (1979). In a contract situation, "mere allegations that one businessman simply trusted another to fulfill his contractual obligations is certainly not enough" to establish a fiduciary relationship. *Id.* at 109, 392 N.E.2d at 764. In *Carey*, the court stated the following, which is equally applicable here:

> The parties herein were all businesses, theoretically operating at arms length, and their relationship was governed according to contracts made between them. Normal trust between friends or businesses, plus a

slightly dominant business position, do not operate to turn a formal, contractual relationship into a confidential or fiduciary relationship. A confidential relationship only goes to a situation where one party, because of some close relationship, relies very heavily on the judgment of another. *Carey,* 30 Ill.Dec. at 108–09, 392 N.E.2d at 763–64.

The duty which Oil Express owed to the defendants with respect to the advertising fund was clearly set forth in the franchise agreement between the parties. Therein, the defendants were to contribute 2.5% of their gross sales to the advertising fund, which Oil Express would use to provide regional and national advertising and develop standardized promotional materials. Oil Express was obligated to administer the advertising fund "as a separate fund, not commingled with Franchisor's general revenues", and it was to provide the franchisees with an annual statement outlining their contributions, the amount expended from the fund, the nature of the expenditures, and the amount remaining in the fund. *See, e.g.,* Complaint Exh. A § 14. Thus, the duties of the parties are clearly set forth in the contract between them, and the defendants' allegations "do not move [them] out of the mainstream of franchisor-franchisee relationships ... into the more subservient position spoken of in *Wernick.*" *Bonfield v. AAMCO Transmissions, Inc.,* 708 F.Supp. 867, 884 (N.D.Ill.1989). Since the defendants have alleged no facts from which a fiduciary relationship may be inferred, we dismiss Count IV of the Counterclaim.

### III. Count V

■ The defendants next seek an equitable accounting of the advertising fund, based on Oil Express' alleged misuse of the fund. The following standard, set forth by the Supreme Court in *Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 478, 82 S.Ct. 894, 900, 8 L.Ed.2d 44 (1962), applies for granting an equitable accounting:

> The necessary prerequisite to the right to maintain a suit for an equitable accounting, like all other equitable remedies, is, as we pointed out in *Beacon Theatres [Inc. v.*

*Westover,* 359 U.S. 500, 506–510, 79 S.Ct. 948, 954–57, 3 L.Ed.2d 988 (1959) ], the absence of an adequate remedy at law. Consequently, in order to maintain such a suit on a cause of action cognizable at law, as this one is, the plaintiff must be able to show that the "accounts between the parties" are of such a "complicated nature" that only a court of equity can satisfactorily unravel them. In view of the powers given to District Courts by Federal Rule of Civil Procedure 53(b) to appoint masters to assist the jury in those exceptional cases where the legal issues are too complicated for the jury adequately to handle alone, the burden of such a showing is considerably increased and it will indeed be a rare case in which it can be met.

*Dairy Queen,* 369 U.S. at 478, 82 S.Ct. at 900 (footnotes omitted). The defendants have not alleged that this matter is of such a complicated nature that a jury would be unable to understand it, and we grant Oil Express' motion.

■ In the Counterclaim, the defendants merely assert that they seek a "complete and accurate accounting" of the fund, and do not allege at all that such an accounting would be extraordinarily difficult or complex. In their Memorandum in Response to Oil Express' motion to dismiss, the defendants for the first time state that "In this case, Defendants and other Oil Express National franchisees have been contributing monthly to the fund for several years.... Because of the number and amounts of deposits made into the Fund over the several years and because of the number of credits and debits necessarily made against this account, the assistance of an accounting expert to examine this Fund will be required." *See* Memorandum in Response to Oil Express' Motion at 10. These allegations, however, do not establish that an examination of the fund is an exercise which the average person could not accomplish, and they do not meet the standards of *Dairy Queen.* Since there is no evidence that a jury could not understand the fund, we must grant Oil Express' motion and dismiss Count V.

## IV. Count VI

Lastly, the defendants claim that Oil Express breached a third-party beneficiary contract entered between Oil Express and CITGO Petroleum Corporation ("Citgo"). As alleged in the Counterclaim, Citgo agreed to sell Oil Express and participating franchisees petroleum products for prices determined in the contract. Citgo was obligated to collect, on each bulk gallon of lubricants it sold to Oil Express locations in the Chicago metro area, an amount specified in Exhibit D to the Citgo–Oil Express agreement. The contract further provided that:

> CITGO shall distribute to the Oil Express Advertising Fund the amounts so collected ... within thirty (30) days of the end of each calendar quarter. The funds shall be held by Oil Express in a segregated, audited account and shall be used by Oil Express for payment of advertising services performed on behalf of Oil Express or its franchisees.

*See* Citgo–Oil Express Agreement, Counterclaim Exh. 1 ¶ 10(b). The defendants allege that Oil Express breached this agreement by failing to deposit all the monies it received from Citgo into a segregated, audited account and that it has failed to use those monies for advertising which would have benefitted all Oil Express franchisees, including the defendants. In support of its motion to dismiss, Oil Express argues that the defendants were neither parties to nor beneficiaries under the contract between itself and Citgo and that they have no standing to sue on the contract. It argues in the alternative that even if the defendants are beneficiaries under the contract, they are merely incidental beneficiaries, not intended beneficiaries, and thus have no right to sue on the contract. These arguments, however, are without merit, and we deny the motion to dismiss Count VI of the Counterclaim.

In Illinois, a determination of whether a party is a third-party beneficiary of a contract is made by following the "intent to benefit" rule. Under this rule, third-party beneficiary status "is a matter of divining whether the contracting parties intended to confer a benefit upon a nonparty to the agreement." *XL Disposal Corp. v. John Sexton Contractors Co.*, 168 Ill.2d 355, 213 Ill.Dec. 665, 669, 659 N.E.2d 1312, 1316 (1995). In making such a determination, we are to look to the contract and the circumstances surrounding its execution. *Id.*, citing *Carson Pirie Scott & Co. v. Parrett*, 346 Ill. 252, 178 N.E. 498 (1931). The face of the supply agreement between Citgo and Oil Express clearly makes franchisees beneficiaries of the contract, and we therefore find that the defendants are beneficiaries under this contract. Paragraph 10 of the agreement states that the money collected by Citgo from Chicago-area franchisees will be paid to Oil Express quarterly. Any such funds are to be held by Oil Express in a segregated, audited account and "shall be used by Oil Express for payment of advertising services performed on behalf of Oil Express *or its franchisees*." (emphasis added). Franchisees are clearly to benefit from this agreement through the expenditure of the money by Oil Express on advertising. Therefore, the contract itself states that franchisees, including the defendants, are to benefit from it, and Oil Express' argument to the contrary is without merit.

It is also established in Illinois that direct third-party beneficiaries under a contract may sue to enforce that contract. As stated by the Illinois Supreme Court:

> The rule is settled in this state that, if a contract be entered into for a direct benefit of a third person not a party thereto, such third person may sue for breach thereof. The test is whether the benefit to the third person is direct to him or is but an incidental benefit to him arising from the contract. If direct he may sue on the contract; if incidental he has no right of recovery thereon.

*People ex rel. Resnik v. Curtis & Davis, Architects & Planners, Inc.*, 78 Ill.2d 381, 36 Ill.Dec. 338, 339, 400 N.E.2d 918, 919 (1980), quoting *Carson Pirie Scott*, 178 N.E. at 501. As discussed above, the contract between Oil Express and Citgo contains an express provision that Citgo is to collect a certain fee for every bulk gallon of petroleum sold to Chicago-area franchises and remit it to Oil Express for advertising expenditures. Franchisees of Oil Express are the clear

beneficiaries of such advertising, and they are consequently direct beneficiaries under the Citgo–Oil Express agreement. As such, the defendants have stated a valid cause of action in Count VI of the counterclaim, and we deny Oil Express' motion to dismiss.

## CONCLUSION

For the reasons set forth above, Oil Express' motion to dismiss certain of the defendants' counterclaims is granted with respect to Counts IV and V, which are dismissed with prejudice, and it is denied with respect to the remaining counts.